# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

Comité de Apoyo a los Trabajadores Agrícolas,
Pineros y Campesinos Unidos del Noroeste,
Northwest Forest Worker Center,
Jesus Martin Sauceda Pineda,
and Juan Doe Plaintiff

      Plaintiffs                     Civil No.

      v.                            Complaint

Thomas E. Perez, in his official capacity as United
States Secretary of Labor;
United States Department of Labor;
Eric M. Seleznow, in his official capacity as Acting
Assistant Secretary for Employment and Training,

      Defendants.

---

## COMPLAINT

### PRELIMINARY STATEMENT

1.      On March 21, 2013, this Court in Civil No. 09-cv-00240 vacated the United States Department of Labor's (DOL's) skill level definition of prevailing wage at 20 C.F.R. § 655.10(b)(2) (2008).  Despite that Order, DOL continues to approve skill level prevailing wages through the use of its 2009 Prevailing Wage Guidance, which was issued to implement the vacated skill level definition of prevailing wages.  As a result of DOL's blatant disregard for this Court's *vacatur* Order, thousands of H-2B workers have been and continue to be certified by DOL at wages at *or below* the Skill Level I wage that both this Court and DOL concluded were causing the very adverse effect that Congress charged DOL with preventing.  This action alleges that the 2009 Wage Guidance violates the Court's March 21, 2013 Order and the Administrative

Procedure Act (APA) and should be set aside. Plaintiffs also seek a temporary restraining order and preliminary injunction prohibiting DOL from using the 2009 Prevailing Wage Guidance to approve prevailing wages pending the resolution of Plaintiffs' challenge to the Wage Guidance.

2.      In addition, this action brings APA challenges DOL's H-2B regulation at 20 C.F.R. §655.10 (f) (2008), which allows an employer to use a private survey to set the prevailing wage despite the availability of a valid Bureau of Labor Statistics (BLS) Occupational Employment Statistics (OES) survey for the occupation and area of employment.  For many years, DOL only allowed the use of employer surveys when  no government survey was available for the occupation and area of employment.  20 C.F.R. § 655.10(f) changed that policy and allowed employers to use private surveys even where there was a valid OES wage.  As DOL itself has recognized, that regulation allows employers who can afford a private survey to pay wages significantly below the OES wage in direct violation of DOL's duty to ensure no adverse effect on U.S. workers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346 over this suit for review of final agency action under the APA, 5 U.S.C. §§ 701-706 (1946), and 28 U.S.C. §2201 (declaratory relief).

4.      This Court has venue pursuant to 28 U.S.C. §1391(e).

## PARTIES

**<u>Plaintiffs</u>**

5.      Plaintiff Comité de Apoyo a los Trabajadores Agrícolas (CATA), known in English as the "Farmworkers Support Committee," is a membership organization open to farmworkers, members of the immigrant worker community, and their supporters.  Members live and work primarily in southeastern Pennsylvania, southern New Jersey, Delaware and eastern

Maryland. Members include U.S. landscaping workers and construction workers.  Through its work, CATA strives to improve the working and living conditions of its members and member communities. CATA seeks to protect its members' interest in ensuring DOL is enforcing the H-2B regulations, complying with the relief they obtained in *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013), and operating in accordance with the APA by challenging the Secretary's unlawful actions.  CATA has members, an office and staff in the Eastern District of Pennsylvania.

6.      Plaintiff Pineros y Campesinos Unidos del Noroeste (PCUN) is a union of farmworkers, nursery, agricultural, food processing and reforestation workers in Oregon. PCUN has more than 5,000 registered members. PCUN's mission is to empower its membership to recognize and take action against worker exploitation. Reforestation workers are subject to regulation under the H-2B program.  Regulation of the H-2B program affects PCUN members' wages, working conditions, and ability to obtain and retain jobs. PCUN seeks to protect its members' interest in ensuring DOL is enforcing the H-2B regulations, complying with the relief they obtained in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013), and operating in accordance with the APA by challenging the Secretary's unlawful action.

7.      The Northwest Forest Worker Center (Center), which was formerly known as the Alliance of Forest Workers and Harvesters, is a multicultural membership organization promoting social, environmental, and economic justice for forestry workers in the Pacific Northwest. Its membership consists of both U.S. workers and H-2B workers who labor in forests. The Center's mission is to advocate for and improve the lives of forestry workers. Forestry workers may be subject to the H-2B regulations, and those regulations affect the Center's

members' wages, working conditions, and ability to obtain and retain jobs. The Center seeks to protect its members' interests in ensuring DOL is enforcing the H-2B regulations, complying with the relief they obtained in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013), and operating in accordance with the APA by challenging the Secretary's unlawful actions.

8.      Jesus Martin Sauceda Pineda ("Plaintiff Sauceda") is a citizen of Mexico and has his permanent residence in Guadalcázar, San Luis Potosi, Mexico. Plaintiff Sauceda entered the United States in March 2013 on an H-2B visa for an employer who was certified by DOL for 38 H-2B "Forest and Conservation Workers" (SOC Code 45-4011) in Calhoun and Jackson counties in northern Florida for employment from April 1, 2013 to November 29, 2013 at $9.90 per hour. Plaintiff Sauceda was a named plaintiff in *Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, Civil No. 13-cv-2713 filed December 11, 2013 (CATA II) challenging DOL's failure to require employers to comply with supplemental prevailing wage determinations issued following the promulgation of the  April 24, 2013 Interim Final Rule (IFR) for establishing prevailing wage rates at 78 Fed. Reg. 24,047 (Apr. 24, 2013) and this Court's March 21, 2013 Order in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, Civil No. 09-cv-00240 (CATA I).  Upon information and belief, on July 18, 2013, DOL approved an employer provided wage survey superseding the $17.14 per hour wage rate which DOL had determined was the required average OES wage rate with a wage rate of $7.80 per hour, which was $2.20 per hour lower than the Skill Level I minimum prevailing wage rate initially established for that job.

9.      Plaintiff Juan Doe is seeking to proceed as a plaintiff in this action without public identification of his identity so as to not jeopardize current employment.  He is currently employed as an H-2B worker by an employer in the landscaping industry in the Eastern District

4

of Pennsylvania who has been approved by the Department of Labor to pay wages based on an employer provided wage survey at wage rates below the OES wage rate.

**Defendants**

10.     Defendant Thomas E.  Perez is the United States Secretary of Labor. The Secretary is responsible for all functions of DOL, including administration of the H-2B program. Secretary Perez is sued in his official capacity, pursuant to 5 U.S.C. § 703.

11.     Defendant United States Department of Labor is responsible for issuance of prevailing wage determinations as a part of the process of granting labor certifications for the H-2B program.

12.     Defendant Eric M. Seleznow is the Acting Assistant Director of the United States Employment and Training and in that capacity directs DOL's Employment and Training Administration (ETA).  He is sued in his official capacity pursuant to 5 U.S.C. § 703.

**FACTS**

**Statutory and Regulatory Framework**

13.     Congress permits employers to obtain H-2B visas for foreign workers to perform temporary non-agricultural services or labor but only if "…unemployed persons capable of performing … services or labor cannot be found in this country." 8 U.S.C. § 1101 (a)(15)(H)(ii)(b).

14.     The statute broadly charges the Attorney General – now the Department of Homeland Security (DHS)[1] – with determining, "upon petition of the importing employer," whether to grant an H-2B visa, but only "after consultation with appropriate agencies of the

---

[1]     The Homeland Security Act of 2002 transferred the authority of the Attorney General for administering certain immigration functions to the new Department of Homeland Security. 6 U.S.C. §§ 202, 236.

Government." 8 U.S.C. § 1184(c)(1).  The Attorney General, in turn, has designated DOL to provide the required consultation in the form of a "temporary labor certification" stating that (1) qualified workers in the United States are not available to fill the employer's job and (2) the alien's employment will not adversely affect wages and working conditions of similarly employed United States workers. 18 Fed. Reg. 4925 (Aug. 19, 1953); 8 C.F.R. § 214.2(h)(6)(iv)(A) (2009) (current language).

15.     Pursuant to this statutory and regulatory mandate, the Secretary of Labor has established rules and procedures governing the issuance of temporary labor certifications.  20 C.F.R. § 655.0(a); 73 Fed. Reg. 29,942 (May 22, 2008).

**The H-2B Prevailing Wage Rule**

16.     Among other requirements for temporary labor certification, DOL has, for over half a century, expected employers to offer wages no less than the prevailing wage in the occupation and location where the work is to be performed.   This prevailing wage requirement is designed both to ensure accurate testing of the availability of U.S. workers and to ensure that, if permission is granted to employ foreign H-2B workers, their employment will not adversely affect the wages of similarly employed U.S. workers. *See* 16 Fed. Reg. 9142 (Sept. 7, 1951).

17.     On or before 1984, DOL gave the state employment service agency (SESA) where an H-2B application was filed the responsibility for setting the prevailing wage for the application in accordance with the procedures set forth in 20 C.F.R. § 656.40 (1978).  GAL 10-84 (April 23, 1984), 49 Fed. Reg. 25,837 (June 25, 1984). Ex. 1.  Section 656.40 directed the SESA to set the prevailing wage at the wage the collective bargaining agreement (CBA) wage if there was one or at the Davis Bacon Act (DBA) or the Service Contract Act (SCA) wage for the occupation and area of employment.  If no applicable CBA, DBA or SCA wage existed, the

SESA was to conduct its own survey of wages of similarly employed workers in the area of employment.  20 C.F.R. § 656.40(1).

18.     In 1995 DOL issued an administrative guidance letter, GAL 4-95 (May 18, 1995), entitled "Interim Prevailing Wage Policy for Nonagricultural Immigration Programs." Ex. 2.  That guidance continued the longstanding policy of requiring employers to pay the CBA, DBA or SCA wage or, in the absence of an applicable CBA, DBA or SCA wage, the wage set by an SESA survey.  However, for the first time, the guidance stated that, in the event the SESA was required to conduct a survey (i.e., in the absence of a CBA, DBA or SCA wage), "the SESA can consider wage data furnished by the employer, e.g. results of a survey conducted by the employer that is *more comprehensive than the SESA's*." Ex. 2 at 7 (emphasis added).

19.     In October 1997, DOL issued a new administrative guidance, GAL 2-98 (Oct 31, 1997), Ex. 3,  which continued to require the prevailing wage to be set at the CBA wage if there was one, or, in the absence of a CBA wage, at the rate set by DBA or SCA surveys.  The guidance went on to state that "[i]n the absence of a wage determination under the DBA, SCA, or a Collective Bargaining Agreement," the SESA could consider an employer survey if it met the requirements of DOL's administrative guidance.  Ex 3 at 7.  DOL did not publish this guidance for public comment and gave no explanation for changing its prior policy which required the employer survey to be more comprehensive than the SESA's survey before it could be accepted.

20.     The policy set forth in GAL 2-98 continued unchanged until 2005 when DOL issued its 2005 Wage Guidance.  Ex. 4. That guidance dramatically changed DOL policy.  It rejected use of DBA and SCA surveys to set prevailing wages in favor of the government's OES survey. *Id.*  It introduced the "skill level" definition of prevailing wages and allowed skill level

prevailing  wages to be set either by manipulating the OES survey to produce four different "skill

level" wages, *id.*, or through employer surveys.  *Id.* at 15. Thus, unlike the prior policy, the 2005

Wage Guidance allowed employer surveys to be used even if there were an applicable wage

generated by the government's OES survey.

21.     The 2005 Wage Guidance document was not published for notice and comment,

nor did DOL offer any explanation for abandoning its prior policy of allowing employer surveys

to be used only in the absence of an applicable prevailing wage based on DOL's chosen

government survey.

22.     In 2008 DOL published a Notice of Proposed Rulemaking (NPRM) which, among

other things, sought to codify the skill level definition of prevailing wage set forth in the 2005

Wage Guidance.  73 Fed. Reg. 29,942, 29,966 (May 22, 2008).

23.     The NPRM was adopted as the final rule and defined the prevailing wage as

follows:

> (b)(2)  If the job opportunity is not covered by a CBA, the
> prevailing wage for labor certification purposes shall be the
> arithmetic mean  .  .  .  of the wages of workers similarly
> employed at the skill level in the area of intended employment.
> The wage component of the BLS Occupational Employment
> Statistics Survey (OES) shall be used to determine the
> arithmetic mean, unless the employer provides a survey
> acceptable to OFLC under paragraph (f) of this section.

20 C.F.R. § 655.10(b)(2) (2008), 73 Fed. Reg. 78,020, 78,056 (Dec. 19, 2008).   As in the 2005

Wage Guidance, as long as there was no applicable CBA wage, the final rule allowed employers

who could afford to do so to use private surveys to set their skill level prevailing wage rather

than use the OES survey wage.  20 C.F.R. § 655.10(b)(2).  Employers were required to "provide

specific information about survey methodology, . . . and survey descriptions, to allow a

determination of the adequacy of the data provided and validity of the statistical methodology

used in conducting the survey *in accordance with guidance issued by the OFLC national office*."
20 C.F.R. § 655.10(f)(2) (emphasis added).

24.     The guidance referenced in 20 C.F.R. § 655.10(f)(2) for evaluating employer
surveys was the 2005 Wage Guidance. A revised version was issued in November 2009 entitled
the "2009 Prevailing Wage Guidance," Ex. 5, although it made no substantive changes in the
employer survey portions of the 2005 Guidance.  The 2009 Guidance, like the 2005 Guidance,
was designed for the purpose of evaluating skill level prevailing wages identified by employer
surveys.  Both the 2005 and 2009 Guidance emphasized that the "relevant factors [for employer
surveys] are the job, the geographic locality of the job, and the level of skill required to perform
independently on the job." Ex. 5 at 16.   The Guidance also made clear that "the job description
submitted on the request for acceptance of an employer-provided survey or other wage data will
be used in determining the appropriate level of skill to be applied." Ex. 5 Appendix F at 1.

25.      The 2009 Wage Guidance, like the 2005 Wage Guidance, was never subjected to
notice and comment rulemaking.

26.     H-2B workers and organizations representing H-2B and U.S. workers, including
Plaintiffs CATA, PCUN,  and the Center, challenged the 2008 skill level wage rule, 20 C.F.R. §
655.10(b)(2),  under the APA in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis,* No.
2:09-240 LP (E.D. Pa.) (*CATA I*). On August 30, 2010, Judge Pollak of the Eastern District of
Pennsylvania granted summary judgment to the plaintiffs in *CATA I*, finding that the "at the skill
level" language used in the definition of prevailing wage at 20 C.F.R. § 655.10(b) was arbitrary
and that the 2005 wage methodology used to implement it was unlawful because it was a
legislative rule that had never been subject to notice and comment rulemaking.  *See CATA I,*
2010 WL 3431761, at *1, *25 (E.D. Pa. Aug. 30, 2010).

27.     In response to Judge Pollak's Order, DOL published a new wage rule on January 19, 2011 with an effective date of January 1, 2012. 76 Fed. Reg. 3452 (Jan. 19, 2011) ("2011 wage rule").  In that rulemaking, DOL found that defining prevailing wages in terms of skill levels was "too low" and had an adverse effect on U.S. workers because it "artificially lowers [wages] to a point that [they] no longer represent[] a market-based wage for the occupation." *Id.* at 3463.  DOL concluded that "[o]ur responsibility to set wage rates that avoid adverse effect on wages compels us to look to the OES arithmetic mean as an appropriate wage setting tool. . ." *Id.* In that same rule-making DOL eliminated the use of employer surveys finding that "[e]mployers typically provide private surveys when the result is to lower wages below the prevailing rate. **Such a result is contrary to the Department's role in ensuring no adverse impact.**" *Id.* at 3465 (emphasis added).  In making this statement DOL was referring to employer surveys approved pursuant to the policies set forth in the 2005 and 2009 Prevailing Wage Guidance.

28.     DOL delayed implementation of the 2011 wage rule numerous times in response to employer lawsuits challenging the validity of the rule and congressional appropriations measures barring DOL from using appropriated funds to implement the rule. *See* 76 Fed. Reg. 59,896 (Sept. 28, 2011); 76 Fed. Reg. 73,508 (Nov. 29, 2011); 76 Fed. Reg. 82,115 (Dec. 30, 2011), 77 Fed. Reg. 60,040 (Oct. 2, 2012), 78 Fed. Reg. 19,098 (Mar. 29, 2013).

29.     As a result of the delay in the implementation of the 2011 wage rule, DOL continued to rely on the invalidated "skill level" definition of prevailing wages, and continued to accept employer surveys that set the skill level prevailing wage using the standards in the 2009 Wage Guidance.

30.     On September 27, 2012, plaintiffs in *CATA I* moved this Court for permanent injunctive relief prohibiting DOL from continuing to use the invalid 2008 skill level definition of

prevailing wages.  On March 21, 2013, this Court granted the plaintiffs' motion for permanent

injunctive relief and vacated the "at the skill level" language from the definition of prevailing

wage in the 2008 regulations, 20 C.F.R. § 655.10(b)(2).  *See Comité de Apoyo a los*

*Trabajadores Agrícolas v. Solis*, 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013) (*CATA II*).

According to the Court, all labor certifications issued under the 2008 wage rule exceeded DOL's

delegated authority because they certified employers at prevailing wages rates that adversely

affect U.S. workers' wages and working conditions, contrary to DOL's congressional and

regulatory mandate.  *Id.*  The Court remanded the rule to DOL and ordered DOL to come into

compliance with the Order within 30 days.

**The April 24, 2013 Interim Final Wage Rule**

31.     In response to the Court's March 2013 Order, DOL and DHS promulgated an

Interim Final Wage Rule (IFR) in the Federal Register. 78 Fed. Reg. 24,047 (Apr. 24, 2013). The

IFR adopted a new definition of prevailing wage which eliminated the concept of skill levels

regardless of whether the prevailing wage was set by the OES survey or an employer survey.

The IFR defined prevailing wages as follows:

> (b)(2)   If the job opportunity is not covered by a CBA, the
> prevailing wage for labor certification purposes shall be the
> arithmetic mean . . . of the wages of workers similarly employed
> level in the area of intended employment.  The wage component of
> the BLS Occupational Employment Statistics Survey (OES) shall
> be used to determine the arithmetic mean, unless the employer
> provides a survey acceptable to OFLC under paragraph (f) of this
> section.

20 C.F.R. §655.10(b)(2) (2013).

32.     Although the IFR eliminated the reference to skill levels in the definition of the

prevailing wage, *DOL continues to evaluate employer prevailing wage surveys pursuant to the*

*2009 Prevailing Wage Guidance* – a guidance which was designed to implement the vacated skill level definition of prevailing wage.

33.    As a result of DOL's continued use of the 2009 Prevailing Wage Guidance to evaluate employer surveys, DOL is currently and, absent injunctive relief, will continue to certify employer wage surveys that set skill level prevailing wages.   For example, in November and December, 2013 and January, 2014 seven Maryland crab processors  submitted an employer wage survey to determine the prevailing wage for H-2B crab pickers, SOC Code 51-3022 (Meat, Poultry, and Fish Cutters and Trimmers).   DOL approved the employer survey wage even though, on its face the survey only surveyed "entry level" seafood workers. *See* Ex. 6.  Pursuant to the 2009 Wage Guidance, "entry level" workers are Skill Level I workers. *See* Ex. 5 at 7.  Not surprisingly the "entry level" prevailing wage identified  by the crab processors' survey was not only below the  OES prevailing wage (i.e. the mean OES survey wage), but was actually below the Skill Level 1 OES wage for that occupation. *See* Ex. 6 at 1.

34.    In its January 2011 H-2B prevailing wage rulemaking DOL explicitly found that the overwhelming majority of H-2B jobs were in occupations requiring little or no prior training or experience and rejected distinguishing between entry level (Skill Level I) and other wages paid in low-skilled occupations.  In that rulemaking DOL concluded that: "[i]n a low-skilled occupation, the mean for the <u>occupation</u> represents the wage that the average employer is willing to pay for unskilled workers to perform that job."  76 Fed. Reg. at 3463.

35.    The continued usage by DOL of skill level wage determinations is reflected in its public disclosure database.  In mid-April 2014, DOL issued a quarterly update to its Office of Foreign Labor Certification (OFLC) Performance Data.  See:

http://www.foreignlaborcert.doleta.gov/performancedata.cfm link to

http://www.foreignlaborcert.doleta.gov/docs/py2014q2/PWD_FY14_Q2.xlsx.   The quarterly

update to that data through March 31, 2014 reflects that for each H-2B application for prevailing

wage determination, DOL determines a Skill Level for that position consistent with the 2009

Prevailing Wage Guidance and despite this Court's Order in March 2013 forbidding the usage of

such distinctions for the H-2B Program.  In the most recent federal FY14 year to date summary

covering October 2013 through March 2014, a total of 1,505 H-2B prevailing wage applications

based on employer wage surveys were approved.  In 99.9% of these approved prevailing wage

determinations, all but 2 of those cases, DOL determined that the position was a Skill Level I

position. *See* Ex. 7.

36.     DOL's actions in continuing to certify skill level prevailing wages identified by

employer surveys, such as the crab processor survey cited above, are causing immediate and

irreparable harm to U.S. workers by allowing employers to import foreign H-2B workers at

depressed skill level wages which are adversely affecting the wages of similarly employed U.S.

workers.

37.     Indeed, more than 21% of the employer wage surveys approved by DOL since

July 2013 offer wage rates **below** the OES Skill Level I wage and more than 94% are below the

Skill Level II wage.   Ex. 7 at 1-2.  Those are the very wages that both this Court and DOL

previously found to be adversely affecting the wages of similarly employed U.S. workers. *See*

*CATA II,* 933 F.Supp.2d at 711, 713.  Such a result is contrary to DOL's statutory and regulatory

mandate as DOL, itself, recognized in the preamble to the 2011 wage rule when it stated that

approval of employer wage surveys at rates below the OES prevailing wage "is contrary to the

Department's role in ensuring no adverse impact." 76 Fed. Reg. 3452, 3465 (Jan. 19, 2011).

38.    The irreparable harm caused by DOL's continued approval of skill level wages identified by employer surveys is increasing with every passing day as more and more employers seek to exploit this loophole in DOL's administration of the H-2B program.

39.    DOL publicly posts database summaries of prevailing wage determinations on its website at http://www.foreignlaborcert.doleta.gov/performancedata.cfm. Exhibits annexed to this complaint are derived from publicly disclosed DOL documents or are summaries of public disclosure data from DOL.

40.    Prior to this Court's March 2013 order vacating the skill level definition of prevailing wages, H-2B employers rarely sought to use employer surveys to set the prevailing wage.  Skill Level I OES wages were sufficiently low that employer surveys were apparently considered unnecessary by most H-2B employers.  Only 49 such surveys were submitted in the twelve month period prior to the Court's *vacatur* order and the subsequent issuance of the Interim Final Rule.  *See* Ex. 8 at 2-3.

41.    In the year prior to the issuance of the April 2013 Interim Final Rule (April 2012 to March 2013) seafood industry related jobs in SOC. Codes 51-3022 (Meat, Poultry, and Fish Cutters and Trimmers), 53-7064 (Packers and Packagers, Hand), and 45-3011 (Fishers and Related Fishing Workers) constituted the only employer wage surveys accepted by DOL apart from those submitted in five (5) cases for Ski/Snowboard Instructors under SOC Code 25-3021 (Self-Enrichment Education Teachers).  Each of the seafood industry occupational codes are classified by DOL as occupations requiring little prior training or experience.

42.    Subsequent to the vacatur of the skill level definition and DOL's use of the mean OES survey wage as the default prevailing wage, employers are increasingly turning to employer surveys as a way to continue paying unlawfully depressed skill level wages. While only 49

employer surveys were approved prior to the IFR, 1,559 have been approved in the nine month period between July 1, 2013 and March 31, 2014 an increase of more than 31 times (3,182%) in the use of surveys over that period.  Ex. 8 at 2.

43.     Of those prevailing wage determinations issued in the nine month period between July 2013 and March 2014 based on employer wage surveys 21.1% were certified at wages below the OES Skill Level I wage for the occupation and area of employment and 94.4% offered wages below the OES Skill Level II wage.  Ex. 8 at 2.

44.     Moreover, the use of surveys is not limited to one or two occupations.  DOL has approved employer wages surveys in 11 of the 21 major occupational groups in which H-2B prevailing wage determinations were issued during the nine month period from July 2013 to March 2014.  Ex. 8 at 1 summarizes by major occupational groups the source of prevailing wage determinations during the period July 2013 to March 2014.  Ex. 8 at 2 itemizes by SOC Code the usage of wage surveys in each of these occupations in that nine month period.

45.     The most commonly certified H-2B position is that of Landscaping and Groundskeeping Workers (SOC Code 37-3011).  *See* DOL Office of Foreign Labor Certification, *H-2B Temporary Non-Agricultural Labor Certification Program - Selected Statistics, FY 2013* reflecting that those landscaping positions constituted 38% of the H-2B positions certified in FY2013.  *See* Ex. 9. [2]

46.     The numerically most significant expansion of the usage of employer wage surveys since this issuance of the IFR in April 2013 has likewise been in the landscaping industry.  In the year prior to the issuance of the IFR no employer wage surveys were submitted for positions in the landscaping industry.  In the nine month period from July 2013 to March

---

[2] Ex. 9 is a DOL Office of Foreign Labor Certification document available at: http://www.foreignlaborcert.doleta.gov/pdf/H-2B_Selected_Statistics_FY_2013_YTD_Q4_final.pdf.

2014, 1,240 prevailing wage determinations for landscape workers (SOC Code 37-3011) were based on employer wage surveys which accounts for 42.7% of all the prevailing wage determinations made for SOC Code 37-3011 during that period. Fully 97.7% of those surveys were approved at wage rates below the OES Skill Level II wage rate.  Of the 1,240 prevailing wage determinations issued for SOC Code 37-3011 based on employer provided wage surveys in the July 2013 to March 2014 time period, 1,212 cases resulted in prevailing wage determinations below the depressed Skill Level II wage rate and 174 of these cases (14%) involved determinations at wage rates below the Skill Level I wage rate.  Ex. 9.

47.    In its January 2011 prevailing wage rulemaking DOL had explicitly noted that it had determined that positions including landscaping and groundskeeping workers, janitors and cleaners, housekeepers, construction laborers and amusement and recreation attendants were all low skilled jobs requiring little or no prior training or experience.  76 Fed. Reg. at 3460.

48.    DOL's continued approval of skill level wages submitted on employer provided wage surveys is not only adversely affecting the wages of similarly employed U.S. workers, but leads to irrational disparities between employers who submit employer provided private wage surveys and those who do not (and who therefore must pay the OES prevailing wage).

49.    For example, during the period of July 2013 through March 2014, 45 employer prevailing wage determination applications for Landscaping and Groundskeeping Workers (SOC Code 37-3011) in the five county Philadelphia metropolitan area were certified at the OES prevailing wage of $14.04 per hour, while 83 employer prevailing wage determination applications for the same occupation in the same area of employment were  certified at prevailing wage rates between $9.16 and $11.22 per hour based on private employer wage surveys. Ex. 10 at 1.  The 83 employer prevailing wage applications based on private wage

surveys allowed employers to pay 20-35% lower prevailing wages than the 32 employer prevailing wage determinations based on the OES average wage, even though they were all seeking to employ workers in the same occupation in the same area of employment. Ex. 10 at 1.

50.     A total of 1,759 H-2B worker positions were certified by DOL on these labor certifications discussed in paragraph 49.  1,151 of those H-2B workers (65.4%) were certified based on employer wage surveys; and 593 H-2B worker positions (33.7%) were certified based on the average OES wage rate of $14.04 per hour.  Ex. 10 at 2-10.[3]

51.     One H-2B employer – Three Seasons Landscape Contracting Services, Inc. – initially obtained OES prevailing wage determinations at $14.04 per hour in PWD Case Numbers P-400-13253-489999 and P-400-13253-719325 on September 30, 2013.  That employer then submitted two subsequent requests for prevailing wage determinations based on employer wage surveys and obtained approval of a $10.03 wage on October 29, 2013 and then an even lower wage rate of $ 9.38 on November 12, 2013. PWD Case Numbers P-400-13256-936471 and P-400-13261-788179.

52.     The usage of employer wage surveys in the H-2B program has become national in scope since the IFR.  In the 12 month period (April 1, 2012 to March 31, 2013) prior to the IFR, DOL approved a total of 49 employer wage surveys as the basis for prevailing wage determinations in five states - Virginia (18), North Carolina (14), Maryland (10), California (5) , and Mississippi (2).  Subsequent to the adoption of the IFR in the nine month period July 1, 2013 to March 31, 2013, the DOL approved a total of 1,559 employer wage surveys in 47 states.  Ex. 11.

---

[3] See: http://www.foreignlaborcert.doleta.gov/docs/py2014q2/PWD_FY14_Q2.xlsx  and http://www.foreignlaborcert.doleta.gov/docs/py2014q2/H2B_FY14_Q2.xls  available from http://www.foreignlaborcert.doleta.gov/performancedata.cfm.

53.     FY2013 DOL Prevailing Wage Determination public disclosure data indicates that in the period May 1, 2013 to June 30, 2013 DOL issued prevailing wage determinations in 1,180 cases.  This constituted 17% of the total of 6,815 prevailing wage determinations for H-2B employment issued for the full FY2013 year. Ex.12,

54.     The H-2B regulations require employers to engage in recruitment of U.S. domestic workers after the approval of a prevailing wage determination and before the employer can file the application with DOL for H-2B labor certification.  A review of the FY2014 Philadelphia metropolitan area H-2B applications listed on Ex. 10 reflects that the period between issuance of a prevailing wage determination and the granting of H-2B labor certification ranged between 25 and 139 day with an average of 61 days between issuance of the prevailing wage determination and the approval of the H-2B labor certification.

55.     DOL FY2013 H-2B public disclosure data indicates that in the period May 1, 2013 to June 30, 2013 DOL issued H-2B labor certifications for employment involving a total of 7,423 H-2B workers.  Ex. 13.

56.     Based upon the increase in submission and approval of employer wage surveys as the basis for H-2B labor certifications during the current FY2014, it is very likely that DOL will issue a large number of prevailing wage determinations prior to determination by summary judgment of the legal challenge to those prevailing wage determination unless barred from doing so by this Court.  Those determinations are likely to affect thousands of additional H-2B workers.

57.     DOL public disclosure data does not include a basis for directly linking the H-2B prevailing wage determination case numbers and information to the separate H-2B certification data.  Based upon a manual review and linkage of the two public disclosure data sets for the

period July 1, 2013 to March 31, 2014, it is possible to identify 17,315 H-2B worker positions in corresponding to slightly less than half of the H-2B labor certifications issued in that time period. An extrapolation of the data would indicate that 25,000 to 30,000 H-2B workers have likely been the basis of H-2B labor certifications issued prior to March 31, 2014.

58.     Additional thousands of H-2B workers will be affected by labor certifications issued on or after April 1, 2014 and thereafter unless further reliance on employer prevailing wage surveys is barred as the basis for further labor certifications.

59.     The attractiveness to H-2B employers of being able to employ H-2B workers at lower wage rates through the  submission of private skill level surveys virtually guarantees that more and more H-2B employers will take advantage of DOL's continued willingness to approve skill level prevailing wages identified by employer surveys.

## FIRST CAUSE OF ACTION
### (CONTEMPT)

35.     The Defendant's actions in continuing to use the 2009 Wage Guidance after this Court issued its March 21, 2013 Order vacating the definition of prevailing wage which the 2009 Wage Guidance was designed to implement are in direct violation of that Court order and constitute contempt of court for which Plaintiffs are entitled to temporary, preliminary and final injunctive relief.

## SECOND CAUSE OF ACTION
### (APA § 706(2) CHALLENGE TO THE 2009 WAGE GUIDANCE)

36.     The Defendant's actions in continuing to use the 2009 Wage Guidance violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), and (D).  Use of the 2009 Wage Guidance violates Section 706(2)(D) because it sets substantive rules and was never published for notice and comment.  It violates Section 706(2)(A) and (C) because it authorizes DOL to

certify depressed skill level prevailing wages in direct violation of DOL's congressional and regulatory mandate to issue labor certifications only where the importation of foreign workers will not adversely affect the wages of U.S. workers. The 2009 Wage Guidance violates Section 706(2)(A) and (D) because DOL has not, and cannot, provide a reasoned explanation for the procedures set forth therein and it is, as a consequence, arbitrary and capricious.  Plaintiffs are entitled, therefore, to an order declaring unlawful and setting aside the 2009 Wage Guidance.

**THIRD CAUSE OF ACTION**
**(APA § 706(2) CHALLENGE TO 20 C.F.R. § 655.10(f))**

37.  Title 20 C.F.R. § 655.10(f) violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C) and (D) because DOL has never provided a reasoned explanation for the rule and the rule is arbitrary, capricious, and contrary to law in that it allows employers, through the use of private surveys, to pay lower prevailing wages than the OES prevailing wage that DOL has determined is the minimum necessary to avoid an adverse effect and that DOL requires of all other employers.   Plaintiffs are, therefore, entitled to an order declaring unlawful and setting aside 20 C.F.R. § 655.10(f).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court:

1.  Enter a temporary restraining order and preliminary injunctive prohibiting  DOL from approving employer wage surveys pursuant to 20 C.F.R. § 655.10(f) and the 2009 Prevailing Wage Guidance pending the outcome of this case;

2.  Enter a temporary restraining order and preliminary injunction requiring DOL to immediately notify employers currently employing H-2B workers pursuant to employer wage survey prevailing wages approved using the 2009 Wage

Guidance, that their wage rates may be unlawful and may have to be increased if Plaintiffs are successful in their challenge to the 2009 Prevailing Wage Guidance and 20 C.F.R. § 655.10(f).

3. Enter an order declaring unlawful and vacating the 2009 Wage Guidance;

4. Enter an order declaring unlawful and vacating 20 C.F.R. § 655.10(f);

5. Enter a permanent injunction ordering DOL to vacate all employer survey prevailing wages certified by DOL since this Court vacated the skill level prevailing wage definition in March 2013 and to issue new lawful prevailing wages for those employers.

Dated:   May 8, 2014

Respectfully submitted,

Arthur N. Read
     PA Attorney No. 29360
Friends of Farmworkers, Inc.
699 Ranstead St Ste. 4
Philadelphia, PA 19106-2334
Telephone: (215) 733-0878
Facsimile: (215) 733-0876
Email: aread@friendsfw.org

Edward Tuddenham
228 W. 137th St.
New York New York 10030
Telephone: 212-234-5953
Facsimile: (512) 532-7780
Email: etudden@prismnet.com

Meredith B. Stewart
Southern Poverty Law Center
1055 St. Charles Avenue, Suite 505
New Orleans, LA 70130
Telephone: (504) 526-1497
Facsimile: (504) 486-8947
Email: meredith.stewart@splcenter.org

Sarah Rempel Claassen
Centro de los Derechos del Migrante, Inc.
519 N. Charles St., Suite 260
Baltimore, MD 21201
Telephone: (410) 783-0236
Facsimile: (443) 817-0806
Email: srempel@cdmigrante.org

Gregory S. Schell
Migrant Farmworker Justice Project
Florida Legal Services, Inc.
508 Lucerne Avenue
Lake Worth, Florida 33460-3819
Telephone: (561) 582-3921
Facsimile: (561) 582-4884
greg@floridalegal.org

D. Michael Dale
Northwest Workers' Justice Project
917 SW Oak, Suite 412
Portland, OR 97205
Telephone: (503) 535-8545
Facsimile: (503) 946-3089
Email: michael@nwjp.org

Clermont F. Ripley
North Carolina Justice Center
224 S. Dawson Street
Raleigh, NC 27601
Telephone: (919) 861-0606
Facsimile: (919) 856-2175
Email: clermont@ncjustice.org

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document and attachments referenced therein is being served by electronic mail on Geoffrey Forney (geoff.forney@usdoj.gov), counsel for Defendants in Civil No. 2:13-cv-07213-LDD and that he has advised counsel for Plaintiffs that he will be representing the Defendants herein.

Dated:   May 8, 2014

Arthur N. Read