IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COMITÉ DE APOYO A LOS       :           CIVIL ACTION
TRABAJADORES AGRICOLAS, et al.  :
             v.              :
THOMAS E. PEREZ, Secretary of the  :        NO. 14-2657
Department of Labor, et al.        :

MEMORANDUM

Legrome D. Davis, J.                                        July 23, 2014

      Plaintiffs sue for judicial review of certain actions, decisions, and regulations in regard to the agency's administration of wage benefits for foreign and United States workers under the "H-2B program," Immigration and Nationality Act of 1952 (INA), 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b) (2014), and regulations promulgated thereunder, 8 C.F.R. § 214.2 and 20 C.F.R. Part 655, Subpart A.  Plaintiff associations – Comité de Apoyo a los Trabajadores Agricolas, Pineros y Campesinos Unidos del Noroeste, the Northwest Forest Worker Center, formerly known as the Alliance of Forest Workers and Harvesters – sue on behalf of their members.  Plaintiffs – Jesus Martin Sauceda Pineda and John Doe – sue on their own behalf.[1]  Defendants are the Secretary of Labor, Thomas E. Perez, Department of Labor (DOL), and Assistant Secretary for Employment and Training Administration (ETA), Eric M. Seleznow.[2]  Jurisdiction is 28 U.S.C. § 1331.

      Here, the scope and limitations of review are defined by the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-583, 701-706, 801-808, 3105, 3344, 6362, 7562.  Chehazeh v. Att'y

---

    [1]  See Compl. ¶¶ 8-9 (Doc. No. 1).  Plaintiff Sauceda is a named representative of a putative class of H-2B workers identified in a related action, Comité de Apoyo a los Trabajadores Agricolas, et al. v. Thomas E. Perez, et al., C.A. No. 13-7213 (E.D. Pa.).  Plaintiffs have not moved for class certification here.

    [2]  "Applications for labor certification are processed by the Office of Foreign Labor Certification (OFLC) in the Employment and Training Administration (ETA)," one of the agencies within the DOL that administers the H-2B program.  La. Forestry Ass'n v. Sec'y U.S. Dept. of Labor, 745 F.3d 653, 664 (3d Cir. 2014); 20 C.F.R. § 655.00.  The National Prevailing Wage Center (NPWC) is "that office within the OFLC from which employers, agents, or attorneys who wish to file an Application for Temporary Employment Certification receive a prevailing wage determination (PWD)."  20 C.F.R. § 655.5.

Gen. of U.S., 666 F.3d 118, 125 & n.11 (3d Cir. 2012).  The APA "provides the statutory

structure on which federal administrative law is built."[3]  1 Richard J. Pierce, Jr., Administrative

Law Treatise, § 1.1 at 2 (5th ed. 2010).

Plaintiffs (collectively, "CATA") move for summary judgment (Doc. No. 6).  Fed. R.

Civ. P. 56.  The motion mirrors the Complaint,[4] challenging Defendants' use of the 2009 Wage

Guidance to calculate prevailing wages to be paid to H-2B workers based on private survey data

submitted by employers under 20 C.F.R. § 655.10(f) (2008).[5]  Compl. ¶¶ 20-25; Pls. Mot. ¶ 2.

Use of that Guidance, it is asserted, contravenes this Court's Order, dated March 21, 2013 (C.A.

No. 09-240, Doc. No. 169), and violates the APA, 5 U.S.C. § 706(2) (A), (C), (D).  Id. The

motion also asserts that the regulation permitting private surveys, § 655.10(f), violates the APA,

5 U.S.C. § 706(2) (A), (C), (D).  Id.  The motion asks that the 2009 Wage Guidance and §

655.10(f) be vacated.  Pls. Mot. ¶ 3 (Doc. No. 6).  It also asks for an order vacating "all employer

[3]  The Administrative Procedure Act (APA) permits judicial review for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," 5 U.S.C. § 702, provided that the "agency action is [not] committed to agency discretion by law," id. § 701(a)(2); no "statutes preclude judicial review, id. § 701(a)(1); and the action is "final agency action," id. § 704.  Chehazeh v. Att'y Gen. of U.S., 666 F.3d 118, 126 (3d Cir. 2012).  Here, there are no applicable preclusion-of-review statutes and no special review provisions in the statutes governing the agency.  "'[I]n the absence or inadequacy' of any 'special statutory review' provision, review may take 'any applicable form of legal action.'"  Id. at 126 (citing Smriko v. Ashcroft, 387 F.3d 279, 290-91 (3d Cir. 2004) (quoting 5 U.S.C. § 703)).

[4]  The Complaint, as filed on May 8, 2014, sues for a declaration that Defendants' use of the 2009 Wage Guidance and private surveys under 20 C.F.R. § 655.10(f) (2008) violate this Court's March 21, 2013 Order and the APA, 5 U.S.C. § 706(2)(A),(C), (D).  Both procedural and substantive violations are alleged. See Compl. ¶¶ 36-37 (Doc. No. 1).  The Complaint asks that  Defendants be enjoined from using that Guidance to calculate prevailing wages for private surveys under § 655.10(f).  Id. ¶ 1.

[5]  "In each case where the employer submits a survey or other wage data for which it seeks acceptance, the employer must provide specific information about the survey methodology, including such items as sample size and source, sample selection procedures, and survey job descriptions, to allow a determination of the adequacy of the statistical data provided and validity of the statistical methodology used in conducting the survey in accordance with guidance issued by the OFLC national office."  20 C.F.R. 655.10(f)(2) (2008).

survey prevailing wages approved . . . on or after March 21, 2013," and  directing "DOL to issue

new prevailing wages for those employers." Id.; see Pls. Br. at 20-24 (Doc. No. 6-2).

 The March 21, 2013 Order permanently enjoined use of the "skill level" methodology for

determining prevailing wages under 20 C.F.R. § 655.10(b)(2) (2008) and vacated the text, "at the

skill level," from that subsection of the regulation.  See Labor Certification Process, 73 Fed. Reg.

78020, 78056 (Dec. 19, 2008) (codified at 20 C.F.R., Part 655) ("2008 Wage Rule").  See also

Comité de Apoyo a los Trabajadores Agricolas, et al. v. Solis ("CATA I"), No. 09-240, 2010 WL

3431761 (E.D. Pa. Aug. 30, 2010) (Pollak, J.); Comité de Apoyo a los Trabajadores Agricolas, et

al. v. Solis ("CATA II"), No. 09-240, 933 F. Supp. 2d 700 (E.D. Pa. Mar. 21, 2013) (Davis, J.).

 Here, Plaintiffs maintain that the 2009 Wage Guidance was designed to implement the

skill level definition of prevailing wages.  See, e.g., Pls. Reply Br. at 2 (Doc. No. 24).  And use of

that Guidance under another subsection of the prevailing wage regulation that permits private

surveys, 20 C.F.R. § 655.10(f), not only violates the Order but also, "violates the APA because it

results in the certification of substandard wages that adversely affect U.S. workers in direct

violation of DOL's statutory and regulatory mandate."  Id.

 Plaintiffs contend that the March 21, 2013 Order vacated the skill level methodology

from the entirety of the prevailing wage regulation, 20 C.F.R. § 655.10.  This contention is not

supported by the Order.  See Hr'g Tr., 32:7-11, June 17, 2014 (Doc. No. 29) (The Court:  "Well,

the order was very narrowly constructed . . . And the order said exactly what it meant, and it

meant no more and no less.").  Plaintiffs' misunderstanding as to the scope of the Order also

serves as the ground for an unsupported charge of civil contempt.  See Compl., "First Cause of

Action (Contempt)," ¶ 35; Pls. Mot. ¶ 2 (Doc. No. 6); Pls. Br. at 14-16 (Doc. No. 6-2); Pls. Reply

Br. at 3-4 (Doc. No. 24).  It is asserted that Defendants knowingly disobeyed that Order with

"blatant disregard."  Pls. Br. at 1, 15 (Doc. No. 6-2).  See also Hr'g Tr., 5:16-21, 6:5-8, June 17,

2014 (Doc. No. 29).  Defendants deny these assertions and correctly submitted at oral argument:

> The court's order is very clear and direct as to vacate a specific regulatory provision
> at 655.10(b), which had to do with the reporting of skill levels tailored to OES
> [governmental] surveys. * * * [T]he fact of the matter remains that . . . 655.10(f) was
> never addressed by the plaintiffs in their original lawsuit, was never addressed in
> their motion to vacate the regulatory provisions in the 2008 rule, and was never
> addressed in this court's order.  So certainly, continuing to operate under 655.10(f)
> was not a violation of the court's order. * * * So at the time the Department
> published the interim final rule, it was never addressed as a significant issue because
> it was never really historically a problem in the program.

Hr'g Tr., 27:8-11, 27:21-28:3, 28:17-20, 27:2-32:11, June 17, 2014 (Doc. No. 29).  See also

Defs. Resp. at 9-15 (Doc. No. 21).  The claims for contempt are without merit.  The record

evidence confirms only the highest professional conduct on the part of both sides.

Defendants' principal position is that the claims presented for decision here are not ripe.[6]

---

[6]  On July 8, 2014, Defendants answered (Doc. No. 30), setting forth four affirmative defenses that
roughly fall under the umbrella of the ripeness doctrine, discussed infra.  See Defs. Answer, Affirmative
Defenses ¶ 2 ("Plaintiff failed to exhaust administrative remedies."); ¶ 3 ("Plaintiffs fail to allege a final
agency action."), ¶ 4 ("Relief should be denied as an exercise of judicial discretion to withhold relief."); and
¶ 5 ("Plaintiffs suffered no injury.").

Importantly, Defendants answered "by way of a general denial . . . of all allegations relating to
DOL's ability to use private surveys including private surveys collecting or reporting wage levels, until the
completion of further comprehensive notice and comment rulemaking in the H-2B program."  Defs. Answer
at 1.  Specifically denying the factual allegations contained in the Complaint "regarding the economic
consequences of private wage surveys and their effect on employer behavior, H-2B workers, and the
domestic market," Defendants aver that:

> the effects of private surveys on the H-2B program  and the domestic labor market are still
> subject to ongoing administrative review by DOL, which intends to issue a new round of
> notice and comment rulemaking to address these economic issues based on H-2B program
> data and comments from the public.

Id. at 3 (citing Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 79 Fed.
Reg. 14450, 14453 (Mar. 14, 2014) ("2014 H-2B Notice"); Wage Methodology for the Temporary Non-
Agricultural Employment H-2B Program, Part 2, 78 Fed. Reg. 24047, 24054-55 (Apr. 24, 2013) ("2013
IFR")).

Hr'g Tr., 18:23-19:19, 20:16-21:5, 22:7-19, 24:13-15, 25:20-27:1, 34:2-8, June 17, 2014 (Doc.

No. 29); Defs. Resp. at 12-13, 14-15, 18, 24 (Doc. 21).  Defendants ask for remand to the agency

without vacatur in order to "complete its contemplated, comprehensive rulemaking" on the issues

of "how to use private surveys, if at all, in the H-2B program" and "the appropriate H-2B

prevailing wage regime," among other important issues and policy concerns.  Id. at 24.

     The crucial issue in this case is not the merits of the parties' respective positions on the

agency's actions, decisions, and regulations.  Instead, it is whether the agency should be

permitted to consider the issues presented here as part of  the agency's planned rulemaking,

without any intervening disruption of the H-2B program from this Court.  This memorandum

concludes that the agency must be permitted to do so.

I.     <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

     The factual background and procedural history of this case have been set out in previous

memoranda issued in related cases.  <u>See</u> <u>CATA I</u>, <u>supra</u> (Pollak, J.); <u>CATA II</u>, <u>supra</u> (Davis, J.).

<u>See</u> <u>also</u> <u>La. Forestry Ass'n, Inc. v. Sec'y U.S. Dept. of Labor</u>,  No. 11-7687, 889 F. Supp. 2d

711 (E.D. Pa. Aug. 20, 2012) (Davis, J.), <u>aff'd</u>, 745 F.3d 653 (3d Cir. Feb. 5, 2014).  Only

information most relevant to this motion for summary judgment is recited here.

     A     The Agency's Administration of Private Employer Wage Surveys

     Under the H-2B regulations promulgated in 2008, Defendants permitted prevailing wages

to be set under 20 C.F.R. § 655.10(b)(2) by using the Occupational Employment Statistics (OES)

survey for each occupational category in the area of intended employment as compiled by the

Bureau of Labor Statistics.  Alternatively, Defendants permitted prevailing wages to be set under

20 C.F.R. § 655.10(f) by using private survey data submitted by employers.  <u>See</u> 2008 Wage

Rule, 73 Fed. Reg. 78020, 78031, 78056 (Dec. 19, 2008).  This rule was continued in the April 24, 2013 Interim Final Rule (IFR).  See Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, 78 Fed. Reg 24047, 24047-48 (Apr. 24, 2013) (codified at 8 C.F.R. § 214.2, 20 C.F.R. § 655.10(b)(2)) (the "2013 IFR").  The 2013 IFR continues to permit prevailing wages to be determined by either the OES survey or a private employer survey.  20 C.F.R. § 655.10(b)(2), 10(f); 78 Fed. Reg. 24047, 24061 (Apr. 24, 2013).

During notice and comment rulemaking in 2010-2011, the agency considered many problems presented by the use of private surveys.  See Wage Methodology for the Temporary Non-agricultural Employment H-2B Program, 76 Fed. Reg. 3452, 3465-3467 (Jan. 19, 2011) ("2011 Wage Rule").[7]  The 2011 Wage Rule prohibits private surveys in most circumstances. They are permitted where the OES survey does not provide any data for an occupation in a specific geographical location, or where the OES survey does not accurately represent the relevant job classification.  Id. at 3467.  The 2011 Wage Rule has not been implemented.

The agency continues to deliberate on how to proceed with the 2011 Wage Rule and the administration of private employer surveys:

> DOL still has the concerns expressed in the 2011 rule about the consistency, reliability and validity of these surveys, as well as the costs and delays involved in DOL's review of surveys. . . . The Department would like to collect additional data on the accuracy and reliability of private surveys covering traditional H-2B

---

[7]  The 2011 Wage Rule is the product of notice and comment rulemaking.  It establishes a wage calculation regime wherein the prevailing wage for an employer's job opportunity within the H-2B program is the highest of the wage calculable under a collective bargaining agreement, if there is one; the arithmetic mean wage of the Occupational Employment Statistics (OES) for each occupational category in the area of intended employment as compiled by Bureau of Labor Statistics; the Davis-Bacon Act (DBA), 40 U.S.C. § 276a et seq.; or the McNamara-O'Hara Service Contract Act (SCA), 41 U.S.C. § 351 et. seq.  See 76 Fed. Reg. 3452, 3453, 3484 (Jan. 19, 2011) (the "2011 Wage Rule").  However, these policy choices have never been implemented because Congress never appropriated the necessary funds until recently.

> occupations to allow for further factual findings on the sufficiency of private surveys
> for setting prevailing wage rates.

2013 IFR, 78 Fed. Reg. at 24054-55 (citing 2011 Wage Rule, 76 Fed. Reg. at 3465-67).  See also

Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 79 Fed.

Reg. 14450, 14453 (Mar. 14, 2014) ("2014 H-2B Notice") (implementation of the 2011 Wage

Rule "subject to modifications based on notice and comment").

On January 17, 2014, the Consolidated Appropriations Act, 2014, Public Law 113-76,

128 Stat. 5, was enacted.  Unlike past appropriations, that Act did not include a rider banning

appropriations to implement, administer, and enforce the 2011 Wage Rule:

> For the first time in over two years, DOL's appropriations did not prohibit the
> implementation or enforcement of the 2011 Wage Rule.

2014 H-2B Notice, 79 Fed. Reg. at 14453.  The parties agree that the 2011 Wage Rule is now

"fully funded."  Hr'g Tr., 14:20-23, 39:15-20, dated June 17, 2014 (Doc. No. 29).

On February 5, 2014, our Court of Appeals decided La. Foresty Ass'n, Inc. v. Sec'y U.S.

Dept. of Labor, supra.  That case challenged the 2011 Wage Rule under the APA and presented

the question whether Defendant the Secretary of Labor has the authority to issue legislative rules

in the H-2B program, specifically the 2011 Wage Rule.  See 2011 Wage Rule, 76 Fed. Reg. at

3453, 3484.  It was held that the Secretary has the authority to do so:

> We find that DOL has authority to promulgate rules concerning the temporary
> labor certification process in the context of the H-2B program, and that the 2011
> Wage Rule was validly promulgated pursuant to that authority.

Id., 745 F.3d at 669.  Our Court of Appeals held that the Secretary has limited legislative

rulemaking authority to carry out Congress's charge to the Department of Homeland Security

(DHS) to consult with and obtain the advice of government agencies such as the DOL:

> We hold . . . that the 2011 Wage Rule was issued pursuant to the DHS' permissible "conditioning" of the grant of H-2B petitions on the advice of the DOL pursuant to the DHS's charge from Congress to "determine[ ]" H-2B visa petitions "after consultation with appropriate agencies of the Government." 8 U.S.C. § 1184(c)(1). . . . We . . . hold . . . that the 2011 Wage Rule was lawfully promulgated pursuant to a reasonable interpretation of a statutory provision charging the DHS with administration of the H-2B program.  See 8 U.S.C. § 1184.  Our decision is completed by the principles of deference governing our review on appeal.

Id., 745 F.3d at 675 (alteration in original) (footnote omitted).

      B.      The Parties' Principal Positions as to the Validity of Private Employer Surveys

      The 2009 Wage Guidance has been used to determine "the adequacy of the [private survey] data provided and validity of the statistical methodology used in conducting the survey." 20 C.F.R. § 655.10(f)(2) (2008).  In Plaintiffs' view, "[t]hat guidance was designed to approve skill level prevailing wages and DOL continues to use it to approve skill level wages" for private surveys.  Pls. Br. at 15 (Doc. No. 6-2).  Defendants do not dispute that the 2009 Wage Guidance results in the approval of skill level wages.  Defs. Resp. at 17-18, 24 (Doc. No. 21).  In addition, "DOL recognizes that the use of skill levels in private surveys is problematic." Id. at 24. And "Defendants agree that employer-provided surveys should not be based on the collection of wages at skill levels." Id. at 18.

      Plaintiffs maintain that use of the 2009 Wage Guidance "is contrary to law" in violation of APA 5 U.S.C. § 706(2)(A) and (C).[8]  Pls. Br. at 16-17 (Doc. No. 6-2).  Because that Guidance authorizes skill level wages below the wages that would be determined by using the OES survey, Plaintiffs say that "the Guidance is causing an adverse effect in direct violation of DOL's

---

[8] "To the extent necessary to decision and when presented, the reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."  APA, 5 U.S.C. § 706(2)(A), (C).

8

Congressional and regulatory mandate." Id. at 16. They also say that labor certifications using the Guidance's skill level definition for prevailing wages exceed the bounds of Defendants' delegated authority. Id. See CATA II, 933 F. Supp. 2d at 712-13 ("Congress and the DHS explicitly preclude the grant of labor certifications to foreign workers whose employment may adversely affect wages and working conditions of similarly employed United States workers.") (citation and internal quotation marks omitted)). Plaintiffs also maintain that the regulation permitting employer surveys, 20 C.F.R. § 655.10(f), is arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A) and (C). Pls. Br. at 18-19 (Doc. No. 6-2).

Again, the parties share common concerns. Both sides agree that 20 C.F.R. § 655.10(f), as codified in the 2008 regulations and 2013 IFR, permits private surveys to be used even where there is a valid OES wage. Both sides acknowledge that employers pay for expensive private surveys aiming to obtain a wage rate that is lower than the available OES survey wage rate. They concur that this allows employers who can afford a private survey to pay wages significantly below the OES wage. Plaintiffs maintain that certification of prevailing wages based on private survey data undercuts the OES wage rate, thereby impairing DOL's performance of Congress's statutory charge to the agencies. Pls. Br. at 20, 18-20 (Doc. No. 6-2). Defendant the Secretary of Labor acknowledges as much:

> [E]mployers typically provide private surveys when the result is to lower wages below the prevailing rate. Such a result is contrary to the Department's role in ensuring no adverse impact.
>
> *   *   *
>
> The Department believes that administrative resources are not best spent on reviewing employer-provided surveys, especially when such surveys are provided typically to avoid using a survey that produces a higher wage.

2011 Wage Rule, 76 Fed. Reg. at 3465, 3467. See also Pls. Br. ¶¶ 2, 4 at 3 (Doc. No. 6-2); Pls.

Reply Br. at 6 (Doc. No. 24) (it is contrary to DOL's role to permit employers to "buy their way out of the OES wage").

Plaintiffs say that the regulation is "facially irrational" because employers who can afford to pay for a private survey are permitted to undercut the OES survey wage rate, whereas those who cannot afford a private survey must pay the higher OES wage rate for the same workers performing the same job in the same location.  Pls. Br. at 18 & n. 8 (Doc. No. 6-2) (e.g., employer surveys for landscape workers in the Philadelphia area with approved wage rates of 22-35% below the OES prevailing wage).  This, Plaintiffs say, contravenes Defendant the Secretary of Labor's repeated endorsement of the OES survey as the appropriate basis for prevailing wages:

> Plainly, lack of an applicable government survey rate and greater comprehensiveness are rational reasons for authorizing use of an employer survey.  But once those limitations are removed, as they are with 20 C.F.R. § 655.10(f), then employer surveys cease to serve a rational function and simply become a convenient way for employers who can afford them to avoid paying the OES wage that all other employers must pay.

Id. at 19 & n.9.  (citing inter alia 2013 IFR, 78 Fed. Reg. at 24053; 2011 Wage Rule, 76 Fed. Reg. at 3463).

In essence, Plaintiffs contend that private surveys should be permitted only where a prevailing wage cannot be established using the OES survey.  Id. at 18-20; see also Hr'g Tr., 10:3-5, 11:3-15, 13:20-22, June 17, 2014 (Doc. No. 29).  The proposed rule would change the current regulation of private surveys.  Nonetheless, Plaintiffs contend that action by this Court is required now.  At oral argument on the motion, counsel explained:

> [P]laintiffs in this case have been trying since 2009 to put an end to the use of skill level prevailing wages that even the Department of Labor has found cause adverse effects, in direct violation of the congressional mandate to avoid adverse effects. * * * And our

> clients are suffering and have been suffering for a long, long time
> under wages that even the Department admits are unlawfully low.
> * * * They [DOL] started using skill level wages in 2005.  We got
> them declared invalid in 2010.  It's now halfway through 2014, and
> they're still using them.

Hr'g Tr., 3:5-10, 38:4-8, 47:9-12, June 17, 2014 (Doc. No. 29).

      C.      H-2B Rulemaking Planned to Commence by December 31, 2014

On March 14, 2014, Defendants notified the regulated community that the agency "intends to publish a notice of proposed rulemaking on the proper wage methodology for the H-2B program working off of the 2011 Wage Rule as a starting point."  2014 H-2B Notice, 79 Fed. Reg. at 14450.  Furthermore, "Defendants anticipate the publication of a notice of proposed rulemaking by December 31, 2014."  Defs. Resp. at 8 ( Doc. No. 21).  See also Hr'g Tr., 19:6-21:5, 21:23-22:15, 26:6-27:1, dated June 17, 2014 (Doc. No. 29) (discussing agency's ongoing empirical investigation, policy evaluations, and planned rulemaking).

In the proposed rulemaking,[9] Defendants the Secretary of Labor and the DOL plan to evaluate the H-2B prevailing wage methodology.  Specifically, the agency plans to consider policy choices made in the 2011 Wage Rule and the 2013 IF as well as those to be newly made.  In addition, the regulated community may participate in the rulemaking through comments:

---

    [9] "With the appropriations rider pertaining to the 2011 Wage Rule having been lifted, the Department has begun the process of determining how to implement that rule, keeping in mind the overlap between that rule and the comments submitted in connection with the 2013 IFR.  DOL has determined that recent developments in the H-2B program require consideration of the comments submitted in connection with the 2013 IFR, and that further notice and comment is appropriate.  As stated in the preamble to the 2011 Wage Rule (76 FR 3458-61), and the preamble to the 2013 IFR (79 FR 24053-54), DOL will continue to implement the H-2B wage methodology using the OES mean wage rate as the proper baseline for setting prevailing wage rates.  DOL continues to evaluate other policy choices, including the possible use of SCA and DBA wage rates and private surveys, in light of additional public input and program experience.  After receiving and reviewing this information, DOL intends to exercise its rulemaking authority to implement a regulation governing the wage methodolgy in the H-2B program, modified as necessary to accommodate these developments and considerations."  2014 H-2B Notice, 79 Fed. Reg. at 14453.

"DOL intends to engage in further notice and comment rulemaking in order to move toward implementing, subject to modifications based on the notice and comment, the 2011 Wage Rule." 2014 H-2B Notice, 79 Fed. Reg. at 14453.  The agency promises final action, stating that it  "will consolidate our current review of comments on the 2013 IF with review of comments received on the new notice of proposed rulemaking, and will issue a final rule accordingly."  Id.

II.   ANALYSIS

The record does not contain any disputed facts material to a decision on the motion for summary judgment.  Only questions of law are presented.  However, the motion will be denied based on threshold considerations of justiciability.  The claims presented here are not ripe for decision.  The agency's factual investigation and rulemaking are not complete.  It has not arrived at a definite decision as to the proper interpretation of the regulation at issue – that is, the determination of prevailing wages under 20 C.F.R. § 655.10(f) for private employer surveys using the 2009 Wage Guidance, among other issues.

"'[F]ederal courts are only empowered to decide cases and controversies' as our Article III jurisprudence defines them."  Birdman v. Office of the Governor, 677 F.3d 167, 173 (3d Cir. 2012) (quoting Felmeister v. Office of Att'y Ethics, 856 F.2d 529, 535 (3d Cir. 1988)); U.S. Const. art. III, § 2.  "'Courts enforce the case-or-controversy requirement through several justiciability doctrines,' which 'include standing, ripeness, mootness, . . . and the prohibition on advisory opinions.'"  Keitel v. Mazurkiewicz, 729 F.3d 278, 280 (3d Cir. 2013) (quoting Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009)).

Even where the constitutional minimum of a case-or-controversy has been met, prudential considerations may still require judicial restraint.  See Lewis v. Alexander, 685 F.3d 325, 338,

12

340 (3d Cir. 2012), cert. denied, 133 S. Ct. 933 (U.S. 2013) (prudential standing requires, inter alia, "that the grievance not be so abstract as to amount to a generalized grievance"); Nat'l Park Hospitality Ass'n v. Dept. of Interior, 538 U.S. 803, 808 (2003) (doctrine of ripeness is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)); accord Felmeister, 856 F.2d at 535. Considerations of ripeness "are sufficiently important that we are required to raise the issue sua sponte even though the parties do not."  Id.

A.   Plaintiffs Have Not Established an Article III Case or Controversy and Adjudication Would be Premature Because Plaintiffs' Claims Are Not Ripe

Whether there is an Article III case or controversy here requires, among other things, that the asserted claims for relief be amenable to judicial resolution – that is, they must be ripe. "Ripeness is among the requirements for a case or controversy to exist."  Birdman, 677 F.3d at 173; accord Keitel, 729 F.3d at 279-80.  "Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  Nat'l Park, 538 U.S. at 808 (citing Abbott Labs., 387 U.S. at 149).  Accord Birdman, 677 F.3d at 173; Felmeister, 856 F.2d at 535.

1.  Fitness of the Issues for Judicial Resolution

In the review of administrative agency actions, considerations of ripeness preserve the proper separation of powers among the judiciary, the legislature, and an executive agency:

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

Nat'l Park, 538 U.S. at 807-08 (quoting Abbott Labs., 387 U.S. at 148-49).  Accord Ohio

Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732-33 (1998); Felmeister, 856 F.2d at 535.

 As our Court of Appeals cautions, "judicial review is premature when an agency has yet

to complete its work by arriving at a definite decision."  Felmeister, 856 F.2d at 535 (citing

Suburban Trails, Inc. v. N.J. Transit Corp., 800 F.2d 361, 365-66 (3d Cir. 1986)).  See also

Hooker Chem. Co., Ruco Div. v. EPA, 642 F.2d 48, 53 (3d Cir. 1981) (questionable compliance

with a regulation was not ripe for adjudication because the EPA continued to investigate and

"review at this time would be an interference with an active administrative proceeding"); Wearly

v. FTC, 616 F.2d 662, 666-68 (3d Cir. 1980) (controversy was not ripe where further factual

development was necessary).  As in Hooker and Wearly, Defendants the Secretary of Labor and

the DOL have not yet taken a final position – specifically here, as to whether prevailing wage

determinations under 20 C.F.R. § 655.10(f) using the 2009 Wage Guidance are valid and

enforceable, and the specific wage methodology to be used.  Until the agency's decision is

formalized, judicial restraint is required.

 In addition, this case presents considerations of ripeness that are closely analogous to

those presented in the seminal cases of Abbott Labs. and Toilet Goods Ass'n v. Gardner, 387

U.S. 158 (1967).  These cases show that "[r]ipeness questions often arise when an agency has

announced a decision to take a certain action, but that action remains tentative at the time of

suit."  Birdman, 677 F.3d at 173.  "A dispute generally is not ripe if the agency's action reflects

the tentative nature of its conclusion, in which case the agency expressly reserves the possibility

that its opinion might change."  Id. (alteration, citation, and internal quotation marks omitted).  In

this case, the agency's reservation of any final action on the validity and use of private surveys,

14

pending completion of further notice and comment rulemaking, is tentative action that warrants judicial deference.  Otherwise, review at this time would improperly intrude upon and likely detract from an active administrative rulemaking proceeding.

Yet another consideration warrants judicial restraint here – that is, the requirement of ripeness comprises the "usually unspoken element" of the preservation of judicial resources:

> If we do not decide it now, we may never need to.  Not only does this rationale protect the expenditure of judicial resources, but it comports with our theoretical role as the governmental branch of last resort. . . . Article III courts should not make decisions unless they have to.

Nat'l Treasury Emp. Union v. United States, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (citing Allen v. Wright, 468 U.S. 737, 752 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (U.S. 2014)).  This rationale applies here.

Defendants have represented to this Court and the 2014 H-2B Notice suggests that Defendant the Secretary of Labor will consider the very issues presented here during the rulemaking planned for 2014-2015.  And the Notice suggests that the regulatory policy choices for rulemaking will comprehend many, if not all, of the Plaintiffs' concerns about establishing fair, equitable prevailing wages based on reliable wage survey data.  It is highly likely that the planned rulemaking will resolve the questions presented here.  However, Defendants have not yet fully developed and formalized the policies and choices to be made.  Although Plaintiffs would prefer a more speedy resolution by judicial intervention, review at this time would only disrupt the agency's work and perhaps prolong the suffering of those Plaintiffs represent.

A line of persuasive cases from the District of Columbia Circuit Court of Appeals supports this conclusion.  See Am. Bird Conservancy, Inc. v. FCC, 516 F3d 1027, 1035-37 (D.C. Cir. 2008) (Kavanaugh, J. dissenting) (ongoing administrative process should be permitted to run

its course before any judicial intervention because interests in judicial economy would be

furthered by the avoidance of unnecessary adjudication, and the separation of powers requires

dismissal so as to not intrude on agency's administrative function); <u>Devia v. NRC</u>, 492 F.3d 421,

424-26 (D.C. Cir. 2007) (review deferred to avoid expenditure of judicial resources on a

complex, fact-intensive case and "what could effectively become an advisory opinion"); <u>Toca</u>

<u>Producers v. FERC</u>, 411 F.3d 262, 266 (D.C. Cir. 2005) (even though the challenged orders

appeared to be "final agency action within the meaning of the APA," the orders were not

"sufficiently final" for judicial review because the agency's ongoing action in a separate docket

could resolve the issues raised in the appeal).

In a situation closely analogous to that presented by the litigation here, <u>AT&T Corp. v.</u>

<u>FCC</u>, 369 F.3d 554, 563 (D.C. Cir. 2004) involved an on-going rulemaking proceeding.  The

case was dismissed based on ripeness considerations:

> The ripeness doctrine aims to balance a petitioner's interest in prompt consideration
> of allegedly unlawful agency action against the agency's interest in crystallizing its
> policy before that policy is subject to review and the court's interests in avoiding
> unnecessary adjudication and in deciding issues in a concrete setting. . . . Here, the
> issue of whether the FCC should adopt § 272–type safeguards is unfit for review,
> because the matter is still under consideration in ongoing rulemaking proceedings.

<u>Id.</u> at 563 (citations omitted).  It is noteworthy that the FCC issued a further notice of proposed

rulemaking inviting public comment on the challenged policies.  The court ruled that "it is clear

that both the Commission and the court will benefit from postponing review of whether

safeguards are necessary . . . until the policy in question has crystallized into a more definite

form."  <u>Id.</u>  The same considerations apply here.  Defendants must be permitted to discharge their

investigatory and rulemaking functions without interference from this Court.

2.  Hardship to the Parties of Withholding Judicial Review

Dismissal of this case on the ground that it is not ripe would serve the interests of judicial economy.  The merits of the regulatory issues presented will likely be the subject of the planned rulemaking that the agency promises to commence in the near future.  Those proceedings may eliminate any need for a judicial decision.

A dismissal here also protects the requisite separation of governmental powers.  It permits Defendant the DOL, an agency of the executive branch, to use its special expertise to inquire further into those subject matters that Congress charged it to administer, without undue interference by a reviewing court.  This would impose minimal hardship on Plaintiffs who will have every opportunity to participate in the new rulemaking planned for 2014-2015.  See Ohio Forestry, 523 U.S. at 733-35 (further administrative proceedings are not a sufficient hardship to overcome the lack of ripeness and justify review).

On balance, the perceived hardship to some H-2B workers, who may not receive increased wages based on the OES survey for some period of time, appears to be relatively less significant.  The record establishes that Defendants the Secretary of Labor and the DOL are using the 2013 IF to administer the H-2B program.  They intend to do so pending conclusion of the planned rulemaking in 2014-2015.  There is no reason to doubt that Defendants have been and will continue to diligently and effectively deliberate on how to best proceed with the 2011 Wage Rule, evaluating other policy choices as well in the light of additional public input and program experience.  Accordingly, Defendants will be permitted to complete the ongoing investigation and planned rulemaking without interference from this Court.

IV.     CONCLUSION

For the reasons above, the motion for summary judgment will be denied.  This action will

be dismissed without prejudice to decision on the merits of a future case or controversy.

An Order accompanies this Memorandum.


BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.